## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LINDA STOUT, SANDRA RAY,** | ) | |
| **LONNEL AND ALFORNIA CARTER,** | ) | |
| **RICKY AND ALENE REEVES, and** | ) | |
| **CATRENA CARTER, on behalf of** | ) | |
| **themselves and others similarly situated,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | Civil Action Number |
| Plaintiff-Intervenor, | ) | **2:65-cv-00396-MHH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEFFERSON COUNTY BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **GARDENDALE BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## CORRECTED PLAINTIFFS' MOTION AND MEMORANDUM OF LAW FOR REASONABLE ATTORNEYS' FEES AND COSTS

# <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.............................................. 2

I.      BACKGROUND OF THE LITIGATION.................................................... 2

II.     INVOLVEMENT OF PLAINTIFFS' COUNSEL IN THIS LITIGATION ..................... 3

III.    HOURS DEDICATED TO THIS LITIGATION ........................................... 3

IV.     HOURLY RATES FOR PLAINTIFFS' COUNSEL ....................................... 4

V.      COSTS OF PLAINTIFFS' COUNSELS....................................................... 4

ARGUMENT ......................................................................................................... 5

I.      PLAINTIFFS ARE PREVAILING PARTIES IN A CIVIL RIGHTS ACTION
        AND ARE ENTITLED TO RECOVER ATTORNEYS' FEES. ..................... 5

II.     PLAINTIFFS' COUNSEL ARE ENTITLED TO RECEIVE REASONABLE
        ATTORNEYS' FEES, EXPERT FEES, AND OTHER LITIGATION COSTS. .............. 6

        A.      Plaintiffs' Requested Attorneys' Fees Are Reasonable. ......................... 6

        B.      Reasonable Hourly Rate ........................................................................ 8

                1.      U.W. Clemon ................................................................. 9

                2.      Monique Lin-Luse ......................................................... 9

                3.      Samuel Spital ............................................................... 10

                4.      Jin Hee Lee .................................................................. 11

                5.      Christopher Kemmitt .................................................... 11

                6.      Deuel Ross ................................................................... 12

                7.      Clyde Hollins ............................................................... 12

Case 2:65-cv-00396-MHH      Document 1210      Filed 05/17/18      Page 3 of 25

**PAGE**

       8.     Matthew Bailey ................................................................................... 13

C.     Reasonable Hours Expended ............................................................... 13

D.    Downward Adjustments to the Lodestar Are Not Warranted.............. 16

E.     Plaintiffs' Requested Expert Fees Are Reasonable. ............................. 16

F.     Plaintiffs' Requested Litigation Costs Are Reasonable....................... 16

CONCLUSION ................................................................................................... 19

CERTIFICATE OF SERVICE ........................................................................... 20


ii

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES:

*ACLU of Ga. v. Barnes,*
  168 F.3d 423 (11th Cir. 1999) ..................................................................... 6, 7, 17

*Brooks v. Ga. Bd. of Elections,*
  997 F.2d 857 (11th Cir. 1993) ................................................................ 17

*Christiansburg Garment Co. v. EEOC,*
  434 U.S. 412 (1978) ................................................................... 6

*Cullens v. Ga. Dep't of Transp.,*
  29 F.3d 1489 (11th Cir. 1994). ............................................................... 17

*Duckworth v. Whisenant,*
  97 F.3d 1393 (11th Cir. 1996) .......................................................... 6, 7

*Evans v. Books-A-Million,*
  762 F.3d 1288 (11th Cir. 2014) ...................................................... 17

*Farrar v. Hobby,*
  506 U.S. 103 (1992) ................................................................. 5

*Fox v. Vice,*
  131 S. Ct. 2205 (2011) .......................................................... 6

*Gaines v. Dougherty Cty. Bd. of Educ.,*
  775 F.2d 1565 (11th Cir. 1985) .............................................. 5

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ..........................................................5, 7-8, 16

*Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham,*
  706 F.2d 1205 (11th Cir. 1983) ......................................... 7

*Kennedy v. Avondale Estates,*
  No. 1:00-cv-1847-JEC, 2007 WL 842125 (N.D. Ga. Mar. 15, 2007) ........................................ 1

*King v. CVS Health Corp.,*
  No. 1:12-CV-1715-KOB, 2017 WL 6336323 (N.D. Ala. Dec. 12, 2017)........................... 12-13

*Lee v. Randolph County Bd. of Educ.,*
  855 F. Supp. 1526 (1995) ...................................................... 6

iii

**PAGE(S)**

*Mannings v. Sch. Bd. of Hillsborough Cty.,*
  Fla., 851 F. Supp. 436 (M.D. Fla. 1994 ................................................................. 5-6

*Missouri v. Jenkins ex rel. Agyei,*
  491 U.S. 274 (1989) ............................................................................................... 17

*Newman v. Piggie Park Enters., Inc.,*
  390 U.S. 400 (1968) ................................................................................................. 6

*Norman v. Hous. Auth. of Montgomery,*
  836 F.2d 1292 (11th Cir. 1988) ......................................................................... 7, 13

*Perdue v. Kenny A. ex rel. Winn,*
  559 U.S. 542 (2010) ............................................................................................. 6-7

*Riverside v. Rivera,*
  477 U.S. 561 (1986) ................................................................................................. 6

*Smalbien ex rel. Estate of Smalbein v. City of Daytona Beach,*
  353 F.3d 901 (11th Cir. 2003) ................................................................................ 7

*Stout v. Jefferson Cty. Bd. of Educ.,*
  250 F. Supp. 3d 1092 (N.D. Ala. 2018) ................................................................. 5

*Stout v. Jefferson Cty. Bd. of Educ.,*
  882 F.3d 988, 1013 (11th Cir. 2018) ..................................................................... 5

## STATUTES & OTHER AUTHORITIES:

42 U.S.C.
  § 1988 ........................................................................................................... 5, 6, 17
  § 1988(c) ............................................................................................................... 16

## INTRODUCTION

On March 6, 2018, Defendant ("Defendant" or "Gardendale") filed a notice in this Court announcing that it would not petition for rehearing in the Eleventh Circuit Court of Appeals or certiorari in the United States Supreme Court. (Doc. 1191). In so doing, Gardendale ended the current litigation regarding its motion to separate, and Plaintiffs became the prevailing party. In light of their position as the prevailing party, Plaintiffs now request reasonable attorneys' fees in the amount of $1,172,773.50 and costs in the amount of $134,848.18 from Defendants for a total of $1,307,621.68. This request is set forth with specificity, detail, and itemization in this memorandum of law and in the supporting documents.[1] The request for attorneys' fees represents the lodestar amount for hours spent successfully litigating this action in a manner that minimized duplication and is adjusted downward by numerous deductions. Similarly, the request for costs represents reasonable and related expenses incurred both in preparation for the filing of this case and in the course of litigating this action. Significantly, Plaintiffs' total request is *$388,922.78 less* than the $1,696,544.46 million paid by Gardendale to its primary counsel, Adams & Reese, for representation in this matter. *See* Ex. A-10, Gardendale Litigation Costs.

The significant victory secured by Plaintiffs' counsel, along with the conservatively-calculated and fully-documented fees and expenses that they accrued in its pursuit, makes these requests reasonable and appropriate in all respects. For these reasons, and those discussed more fully below, Plaintiffs respectfully request that this Court grant their petition for fees and costs.

---

[1] Insofar as Defendants have indicated that they may oppose this motion and file a formal opposition, Plaintiffs reserve the right to supplement this fee petition to include the time and costs associated with responding to Defendants' filings. *See, e.g.*, *Kennedy v. Avondale Estates*, No. 1:00-cv-1847-JEC, 2007 WL 842125, at *4 (N.D. Ga. Mar. 15, 2007) (concluding that "generally, . . . plaintiffs are entitled to the time spent preparing fee petitions"); *see also id.* at **10-11 n.8-9 (counting "the hours spent by plaintiffs on their reply in support of their renewed motion for attorney's fees," and including them in "the figures presented by plaintiffs . . . in their renewed motion for attorney's fees," in award for plaintiffs' fees and costs).

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    BACKGROUND OF THE LITIGATION

On March 13, 2015, Defendants filed a Motion to Intervene as defendants in this case (Doc. 1002), thus commencing three years of litigation.  The parties soon began fact and expert discovery that lasted through the middle of 2016.  On December 11, 2015, Gardendale filed a Motion to Operate Municipal School System and Plan of Separation.  (Doc. 1140).  Plaintiffs filed a Response in Opposition on August 27, 2016, which led to a Response from Gardendale (Doc. 1097), a Reply by the Plaintiffs (Doc. 1101), and a sur-reply by Gardendale (Doc. 1104).  Following a motions hearing on November 18, 2016, the case proceeded to a bench trial before this Court.  The trial began on December 1, 2016, and ended on December 9, 2016.  The parties all filed post-trial briefs a few weeks later. (Docs. 1134-38).

This Court issued a 190-page opinion on April 24, 2017, which granted the Defendants' motion in part and denied it in part. (Doc. 1141).  The Court permitted Gardendale to operate a school district that included Gardendale Elementary School and Snow Rogers Elementary School but denied Gardendale's request to operate a K-12 system that included control of Bragg Middle School or Gardendale High School.  *See id.*  Plaintiffs filed a Motion to Amend/Correct Memorandum Opinion a week later (Doc. 1149), and this Court denied the motion in a supplemental opinion the following week.  (Doc. 1152).

Plaintiffs then appealed this Court's decision to the Eleventh Circuit Court of Appeals (Doc. 1158), and Gardendale cross-appealed (Doc. 1164).  Both parties submitted multiple appellate briefs, and the case ultimately proceeded to argument on December 14, 2017.  On February 13, 2018, the Eleventh Circuit issued an opinion that agreed with both of the legal positions urged by Plaintiffs and rejected all of the legal arguments advanced by Defendants.  (Doc.

1188).  A few weeks later Gardendale filed a notice that it would not seek further review of the Eleventh Circuit's ruling (Doc. 1191), and this litigation was brought to a close.

## II.     INVOLVEMENT OF PLAINTIFFS' COUNSEL IN THIS LITIGATION

Plaintiffs primarily have been represented in this case by attorney U.W. Clemon and by NAACP Legal Defense & Educational Fund, Inc. ("LDF") attorneys Monique Lin-Luse, Christopher Kemmitt, Samuel Spital, Jin Hee Lee, and Deuel Ross.  Together, these attorneys provided Plaintiffs with substantial expertise in school desegregation law, complex federal litigation, appellate advocacy, and civil practice in the Northern District of Alabama.  Though this Court is well positioned to assess the quality of the legal work performed over the duration of this case, Plaintiffs' attorneys provide additional information regarding their substantial litigation experience.  *See* Ex. A, Kemmitt Decl.; Ex. B, Clemon Declaration.  Plaintiffs' litigation team included an appropriate combination of attorney experience levels, as described in the attached declarations.  *See e.g.*, Ex. A, Kemmitt Decl. ¶ 59.

## III.    HOURS DEDICATED TO THIS LITIGATION

Plaintiffs' counsel maintained detailed time records of their work in this litigation. These detailed records are summarized below and are attached as exhibits to the declarations of Plaintiffs' counsel. Ex. A-1, Kemmitt Time; Ex. A-2, Lin-Luse Time; Ex. A-3, Spital Time; Ex. A-4, Lee Time; Ex. A-5 Ross Time, Ex. A-6, Hollins Time; Ex. A-8, Bailey Time; Ex. B-1, Clemon Time. Plaintiffs' counsel seek fees for 2,783.3 hours spent litigating this action to its successful conclusion, subject to certain and considerable exclusions described below and in the supporting declaration of Plaintiffs' counsel. Ex. A, Kemmitt Decl. ¶ 23, 24, 62.  As set forth in the accompanying declaration of Mr. Kemmitt, a number of other LDF attorneys assisted in the review and litigation of this case; however, counsel has not included the fees related to work performed by these attorneys.  Ex. A, Kemmitt Decl. ¶ 23.

## IV.    HOURLY RATES FOR PLAINTIFFS' COUNSEL

As discussed more fully below, the hourly rates requested by Plaintiffs' counsel are based on prevailing market rates in the Birmingham, Alabama legal market.  Plaintiffs' requests are supported by the rates paid to Gardendale's attorneys in this litigation, which Plaintiffs received through an open records request, and the attached affidavits that set forth the market rates for civil rights litigation in Birmingham.  *See* Ex. A-10, Gardendale Litigation Costs; Ex. A-9, Adams & Reese Rates; Ex. C, Blacksher Decl. (citing rates of $300-$550 for federal practice in Birmingham), Ex. D, Still Decl. (same).

| Attorney/Paralegal | Graduation Year | Hourly Rate |
|---|---|---|
| U.W. Clemon | 1968 | $500 |
| Samuel Spital (Litigation Director) | 2004 | $480 |
| Jin Hee Lee (Deputy Litigation Director) | 2000 | $480 |
| Monique Lin-Luse | 2010 | $400 |
| Christopher Kemmitt | 2005 | $400 |
| Deuel Ross | 2009 | $360 |
| Clyde Hollins (Paralegal) | 1987 | $125 |
| Matthew Bailey (Paralegal) | 2002 | $125 |

## V.    COSTS OF PLAINTIFFS' COUNSELS

Plaintiffs' counsel also seeks reasonable costs in the amount of $134,848.18.  See Ex. A, Kemmitt Decl. ¶ 61-62; Ex. A-8, LDF Costs; Ex. B-2, Clemon Costs.  LDF accrued $123,619.06 in costs, and Mr. Clemon accrued $11,229.12 in costs.  *See* Ex. A-8, LDF Costs; Ex. B-2, Clemon Costs.  An itemization of these costs also is attached as an exhibit to the declarations of Plaintiffs'

counsel.  *See* Ex. A, Kemmitt Decl. ¶ 61-62; Ex. A-8, LDF Costs; Ex. B, Clemon Decl. ¶ 19, 25; Ex. B-2, Clemon Costs.

## ARGUMENT

### I.    PLAINTIFFS ARE PREVAILING PARTIES IN A CIVIL RIGHTS ACTION AND ARE ENTITLED TO RECOVER ATTORNEYS' FEES.

The attorneys' fee provision of 42 U.S.C. § 1988 authorizes courts to award reasonable attorneys' fees to prevailing civil rights litigants. For entitlement to attorneys' fees under the statute, a plaintiff must be a "prevailing party." *Farrar v. Hobby*, 506 U.S. 103, 110 (1992). Plaintiffs may be considered prevailing parties if they succeed on any significant issue in litigation that achieves some of the benefit they sought in bringing the suit.  *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  In the instant action, Plaintiffs qualify as a prevailing party because they obtained relief on the merits of their claims. Gardendale sought to secede from the Jefferson County School District ("JCSD") and create its own municipal school district.  Plaintiffs opposed Gardendale's efforts, arguing that Gardendale's secession effort was motivated by intentional racial discrimination, and that its request to operate a new school district would undermine desegregation efforts in Jefferson County.   Ultimately, both of those positions prevailed, and Gardendale was precluded from operating its own school district.  *See Stout v. Jefferson Cty. Bd. of Educ.*, 250 F. Supp. 3d 1092 (N.D. Ala. 2018), *aff'd in part and rev'd in part, Stout v. Jefferson Cty. Bd. of Educ.*, 882 F.3d 988, 1013 (11th Cir. 2018).  Accordingly, Plaintiffs secured the requisite relief necessary to qualify as a prevailing party and are therefore entitled to reasonable attorneys' fees and expenses.

Courts in this circuit have consistently held that prevailing parties in school desegregation cases are entitled to attorneys' fees. *See Gaines v. Dougherty Cty. Bd. of Educ.*, 775 F.2d 1565, 1569 (11th Cir. 1985); *Mannings v. Sch. Bd. of Hillsborough Cty.*, Fla., 851 F. Supp. 436, 440

(M.D. Fla. 1994) (holding that "a prevailing party in a school desegregation case should recover fees under 42 U.S.C. § 1988"); *see also Lee v. Randolph County Bd. of Educ.*, 855 F. Supp. 1526 (1995) (holding that civil rights plaintiffs "are a prevailing party entitled to attorney fees if relief is achieved through consent decree"). Thus, because plaintiffs are a prevailing party within the meaning of § 1988 in a school desegregation case, they are entitled to the recovery of reasonable attorneys' fees.

> As the Supreme Court explained:

> When a plaintiff succeeds in remedying a civil rights violation . . . , he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (per curiam). He therefore "should ordinarily recover an attorney's fee" from the defendant—the party whose misconduct created the need for legal action. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978) . . . . Fee shifting in such a case at once reimburses a plaintiff for "what it cos[t] [him] to vindicate [civil] rights," *Riverside v. Rivera*, 477 U.S. 561, 577-578 (1986) . . ., and holds to account "a violator of federal law," *Christiansburg*, 434 U.S. at 418.

*Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (parallel citations omitted) (internal quotations omitted).

## II.    PLAINTIFFS' COUNSEL ARE ENTITLED TO RECEIVE REASONABLE ATTORNEYS' FEES, EXPERT FEES, AND OTHER LITIGATION COSTS.

### A.    Plaintiffs' Requested Attorneys' Fees Are Reasonable.

The ultimate determination of whether plaintiffs are entitled to attorneys' fees rests on a three-step process. *First*, plaintiffs in a litigation must have "prevailed" statutorily. *Hensley*, 461 U.S. at 433. Here, as described in the foregoing section, Plaintiffs have so prevailed.

*Second*, this Court must calculate the "lodestar," or the number of hours spent in the legal work on the case, multiplied by a reasonable market rate in the local area. *ACLU of Ga. v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999); *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010) (referring to the lodestar approach as the "guiding light of our fee-shifting jurisprudence") (citation and internal quotation

marks omitted). As the Eleventh Circuit explained, "[a] reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *ACLU*, 168 F.3d at 436 (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). Plaintiffs are not required to hire the nearest and least expensive attorneys, *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983), but are instead empowered by Congress's fee shifting statute "to attract competent counsel to represent citizens deprived of their civil rights," *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach,* 353 F.3d 901, 908 (11th Cir. 2003) (citation omitted). Furthermore, "counsel for a prevailing party [in civil rights cases] should be paid, as is traditional with attorneys compensated by a fee-paying client 'for all time reasonably expended on a matter.'" *Hensley*, 461 U.S. at 430 n.4 (citations omitted).

Plaintiffs may establish a reasonable hourly rate by "direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates." *Duckworth*, 97 F.3d at 1396 (citation omitted). Moreover, as the Eleventh circuit has explained, "[t]here is nothing inherently unreasonable about a client having multiple attorneys," so long as plaintiffs demonstrate that the time spent by those attorneys "reflects the distinct contribution of each lawyer and is the customary practice of multiple-lawyer litigation." *ACLU*, 168 F.3d. at 432 (quoting *Norman*, 836 F.2d at 1302).

*Third*, a court may adjust the lodestar to account for other considerations not figured in the computation, particularly with respect to the relief obtained in the litigation. *Hensley*, 461 U.S. at 434; *see also Duckworth*, 97 F.3d at 1399. District courts "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435. Notably, "[w]here a plaintiff has obtained excellent results,

his attorney should recover a fully compensatory fee," which typically "will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. "The court necessarily has discretion in making this equitable judgment." *Id*. at 437. At the same time, the Supreme Court has made clear that a fees request should not result in a second major litigation. *Id*.

Here, Plaintiffs' counsel invested 2,783.3 hours in the successful litigation of this case. Ex. A-1, Kemmitt Time; Ex. A-2, Lin-Luse Time; Ex. A-3, Spital Time; Ex. A-4, Lee Time; Ex. A-5 Ross Time, Ex. A-6, Hollins Time; Ex. A-7, Bailey Time; Ex. B-1, Clemon Time. Both the hours expended in this case and the requested hourly rates are reasonable. *See* Ex. B., Clemon Decl. ¶ 19-25; Ex. C, Blacksher Decl.; Ex. D, Still Decl. Plaintiffs won a complete victory in a legally significant, hotly contested, and high-profile case. *See* Ex. B, Clemon Decl. ¶ 16-18. This Court should, in the exercise of its discretion, award Plaintiffs their full lodestar amount as set forth below.

### B.    Reasonable Hourly Rate

Plaintiffs' attorneys have all distinguished themselves professionally, and they collectively brought to bear expertise in school desegregation and civil rights law, trial and appellate expertise, and the institutional legal knowledge of LDF. The fees requested are more than supported by prevailing rates in Birmingham, Alabama, as demonstrated by both the attached affidavits and the rates paid to the Defendants' attorneys in this case. *See* Ex. A-9, Adams & Reese Rates; Ex. B, Clemon Decl. ¶19-25. Nine different attorneys from Adams & Reese billed time on this case, and all but three billed at rates north of $400/hour. *See* Ex. A-9, Adams & Reese Rates. These billing rates are commensurate with the rates requested by Plaintiffs' counsel, which provide powerful evidence of the market rates for litigating this type of matter. Indeed, Plaintiffs' counsel could likely charge higher rates given their additional experience litigating civil rights cases. And

Defendants were guaranteed to receive payment for the hours that they billed. Plaintiffs' counsel fully bore the risk that they would invest well over $100,000 in expenses and thousands of litigation hours with no compensation.

### 1. U.W. Clemon

U.W. Clemon graduated from Columbia Law School in 1968. *See generally* Ex. B, Clemon Decl. He spent the first dozen years of his career with the firm of Adams, Baker, & Clemon, which specialized in the litigation of civil rights cases, often involving issues of racial discrimination. Several of these cases were class actions, including the instant case, for which Mr. Clemon was lead counsel five decades ago. In 1974, he became the first African American elected to the Alabama State Senate since Reconstruction. In 1980, Mr. Clemon was appointed by President Jimmy Carter and unanimously confirmed by the United States Senate as Alabama's first Black federal judge. He served nearly thirty years on the Northern District of Alabama, including seven years as Chief Judge. Following his service on the federal bench, Mr. Clemon returned to private practice, including his work on this matter. He has also served as a Distinguished Visiting Professor at the University of Alabama Law School and has received numerous awards and citations. His resume is singular, and an hourly rate of $500 is eminently reasonable for Mr. Clemon's services.

### 2. Monique Lin-Luse

Monique Lin-Luse is an Assistant Counsel at LDF. *See* Ex. A, Kemmitt Decl. ¶ 26-29. She received her Masters in Secondary Social Studies Education from City University of New York in 2006, graduated from Georgetown University Law Center in 2010, and then began work as a Zubrow Fellow for Children's Rights at the Juvenile Law Center. Ms. Lin-Luse joined LDF in 2013 as Special Counsel to the Education Practice Group and transitioned to her current position

as Assistant Counsel in LDF's reorganized litigation department in 2014.   At LDF, Ms. Lin-Luse

focuses on school desegregation litigation and serves as a resource to other LDF attorneys who are

litigating school desegregation cases.   Ms. Lin-Luse has an unusually well-developed knowledge

of school desegregation law and educational policy, which made her a unique asset in this

particular litigation.   Furthermore, as LDF's lead counsel in the current litigation, she was

principally responsible for strategic decision-making in this case and, in the belief of undersigned

counsel, distinguished herself in this regard.   An hourly rate of $400 is reasonable for Ms. Lin-

Luse.   The other hourly rates requested herein are based more directly on seniority, as were the

rates charged by Adams & Reese; however, undersigned counsel believe that Ms. Lin-Luse's

expertise in this particular subject area and performance in this litigation make clear that she

warrants a higher hourly rate.   No member of the Defense team appears to have education

credentials that rival those of Ms. Lin-Luse.

### 3.    Samuel Spital

Samuel Spital is the Director of Litigation at LDF.   *See* Ex. A, Kemmitt Decl. ¶ 31-36.   In

that capacity, he oversees all of LDF's litigation, including LDF's school desegregation docket.

He is a 2004 graduate of Harvard Law School, and following law school he served as a law clerk

for the Honorable Harry T. Edwards of the United States Court of Appeals for the District of

Columbia Circuit and the Honorable John Paul Stevens of the United States Supreme Court.   Prior

to joining LDF, Mr. Spital spent more than a decade working at two national law firms, where he

devoted much of his time to civil rights and capital habeas litigation.   He worked most recently as

a partner at Holland & Knight, and his standard billing rate at the time he left Holland & Knight

was over $850 per hour.   An hourly rate of $480, which is equal to four members of Gardendale's

litigation team, *see* Ex. A-9, Adams & Reese Rates, is reasonable for Mr. Spital.

10

### 4. Jin Hee Lee

Jin Hee Lee is the Deputy Director of Litigation at LDF. *See* Ex. A, Kemmitt Decl. ¶ 37-42. As Deputy Director, she oversees LDF's education and criminal dockets, including all of LDF's school desegregation cases. Ms. Lee is a 2000 graduate of Columbia Law School, where she was a Harlan Fiske Stone Scholar. After graduation, she clerked for Judge Martha Vazquez in the United States District Court for the District of New Mexico. She worked for Morrison & Foerster LLP and New York Lawyers for the Public Interest before joining LDF in 2008. During her time at LDF, Ms. Lee has been lead counsel on a number of civil rights and criminal defense cases. Since 2014, she has been Deputy Director of Litigation. Ms. Lee was recognized by Columbia Law School's Social Justice Initiative as the Distinguished Public Interest Graduate of the Year in 2016. An hourly rate of $480 is reasonable for her services.

### 5. Christopher Kemmitt

Christopher Kemmitt is a Senior Counsel at LDF. *See* Ex. A, Kemmitt Decl. ¶ 14-22. He is a 2005 graduate of Yale Law School. After graduation, he served as a law clerk to the Honorable Nancy Gertner of the United States District Court for the District of Massachusetts and the Honorable Betty Binns Fletcher of the United States Court of Appeals for the Ninth Circuit. Mr. Kemmitt worked at the Public Defender Service for the District of Columbia from 2007-2015, where he represented clients at trial and specialized in appellate litigation. He has worked at LDF for the past three years, where he has split his time between a broad array of civil rights matters and representing people convicted of capital offenses in post-conviction proceedings. An hourly rate of $400/hour is reasonable for his services. This request is supported by the fact that Defendants paid $375/hour for an attorney who graduated law school a year after Mr. Kemmitt

and did not possess apparent civil rights or education experience.[2]  *See* Ex. A, Kemmitt Decl. ¶ 55; Ex. A-9, Adams & Reese Rates.

### 6.    Deuel Ross

Deuel Ross is an Assistant Counsel at LDF.  *See* Ex. A, Kemmitt Decl. ¶43-46.  After graduating from the University of Pennsylvania Law School in 2009, Mr. Ross served as a law clerk for the Honorable Roger L. Gregory of the United States Court of Appeals for the Fourth Circuit.  He was employed as a Marvin M. Karpatkin Fellow at the American Civil Liberties Union from 2010 to 2011, where he worked on racial justice issues in education and other areas.  Mr. Ross was then awarded the LDF/Fried Frank Fellowship and spent two years as a litigation associate at Fried Frank before matriculating to LDF.  At LDF, Mr. Ross has specialized in education and voting rights litigation, and works on a number of school desegregation cases.  An hourly rate of $360 is reasonable for Mr. Ross. This figure is consistent with the rate paid by Defendants to an attorney with a similar number of years of legal experience but significantly less apparent experience litigating education and civil rights matters.  *See* Ex. A, Kemmitt Decl. ¶ 55; Ex. A-9, Adams & Reese Rates.

### 7.    Clyde Hollins

Clyde Hollins was the Paralegal Manager at LDF from 2014-2017.  *See* Ex. A, Kemmitt Decl. ¶ 47-50.  He received his B.A. in 1987 from Syracuse University and completed one year of law school at Villanova University School of Law in 1988.  In 1991, he received a certificate from The Institute for Paralegal Training. From 1992 until 2014, Mr. Hollins worked as a litigation paralegal at three national law firms in New York City.  He joined LDF in 2014.  An hourly rate of $125 is reasonable for Mr. Hollins's services.  *See* Ex. B, Clemon Decl. ¶ 25; *King v. CVS*

---

[2] Representations about the experience of opposing counsel in civil rights litigation is based upon a review of each attorney's publicly-available professional biography on the firm's website.

*Health Corp.*, No. 1:12-CV-1715-KOB, 2017 WL 6336323, at *5 (N.D. Ala. Dec. 12, 2017) (finding rate of $125/hour reasonable for paralegal).

### 8.    Matthew Bailey

Matthew Bailey is a paralegal at LDF.  *See* Ex. A, Kemmitt Decl. ¶ 51-53.  He graduated from the University of Texas at Austin in 2002.  Following graduation, he worked for 14 years at a series of law firms, including Goodwin Procter LLP, O'Melveny & Myers LLP, and Brown McCarroll LLP.  He has worked at LDF since January 2017.  An hourly rate of $125 is reasonable for Mr. Bailey's time.  *See* Ex. B, Clemon Decl. ¶ 25.

### C.    Reasonable Hours Expended

Not only are the hourly rates sought by Plaintiffs' counsel reasonable for the Birmingham, Alabama market, the hours that they expended also are reasonable and free of excessive, redundant, or otherwise unnecessary hours.  *Norman*, 836 F.2d at 1301-02.  Plaintiffs' counsel reasonably dedicated 2,783.3 hours to nearly three years of litigation that included, *inter alia*, discovery, a trial, and a cross appeal—1,062 hours at a $500 rate for Mr. Clemon; 59.2 hours at $480 rate for Mr. Spital; 40.5 hours at a $480 rate for Ms. Lee; 653.1 hours at a rate of $400 for Ms. Lin-Luse, 753.7 hours at a $400 rate for Mr. Kemmitt; 18.5 hours at a $360 rate for Mr. Ross, 108.8 hours at $125 a rate for Mr. Hollins, and 87.5 hours at a $125 rate for Mr. Bailey. *See* Ex. A-1, Kemmitt Time; Ex. A-2, Lin-Luse Time; Ex. A-3 Spital Time; Ex. A-4 Lee Time; Ex. A-5 Ross Time; Ex. A-6 Hollins Time; Ex. A-7 Bailey Time; Ex. B-1 Clemon Time. The reasonableness of Plaintiffs' request is supported by the fact that Defendants paid opposing counsel a significantly larger sum than Plaintiffs have requested—and, thus, almost certainly billed more hours to this matter.  *See* Ex. A-10, Gardendale Litigation Costs.  Furthermore, Plaintiffs have made multiple voluntary adjustments to the hours included herein such that the number of hours

claimed understates the number of hours worked by LDF staff by several hundred hours. *See* Ex. A, Kemmitt Decl. ¶ 23-24.

As detailed in the supporting declarations and attachments thereto, each attorney provides sufficient detail regarding the duration of time spent working on (and the specific nature of) various responsibilities throughout this litigation to enable this Court to determine that the hours "were actually and reasonably expended" in litigating this case, particularly in light of the voluntary deductions by Plaintiffs' counsels in their exercise of billing judgment, as discussed below.

Further, the time entries sufficiently detail the specific tasks to which each attorney's time was devoted, and demonstrate that counsel efficiently divided those tasks, thereby eliminating duplication of efforts. Indeed, the hours spent by Plaintiffs' counsel in this litigation represent a strategic division of labor among various LDF counsel and Mr. Clemon. *See, e.g.*, Ex. A, Kemmitt Decl. ¶ 59. Accordingly, the hours expended by Plaintiffs' counsel represent the lodestar amounts for hours spent on this litigation based on reasonable hourly rates, as well as a careful exercise of billing judgment, including, but not limited to, exclusions for: (1) eliminating more than 100 hours billed by attorneys who participated in discrete pieces of the litigation; (2) excluding all time spent on this matter by former Director of Litigation, Christina Swarns, President and Director-Counsel, Sherrilyn Ifill, and Associate Director-Counsel, Janai Nelson; and (3) with respect to LDF, billing necessary travel time to and from Alabama at one-half the respective lodestar rates sought for attorneys in this litigation. *See* Ex. A, Kemmitt Decl. ¶¶ 23-24. The total amount also does not include 402 hours spent on this litigation by former LDF fellows Gary Crosby and Christopher Wilds. The total amount further excludes hours incurred by Ms. Lin-Luse from the beginning of July 2017 through the end of the year, at a time when Plaintiffs believe that she likely spent

hundreds of hours working on the appeal in this case, and all time before August 24, 2015.[3]  In short, the hours requested by Plaintiffs in this motion significantly understate the actual number of hours expended in the litigation of this matter.

The length of this litigation and the number of hours accrued is a function of the multiple stages of litigation needed to resolve this case.  Following Defendants' intervention in this case, Plaintiffs needed to undertake an extensive discovery process that included numerous depositions. The case then proceeded to a bench trial, to post-trial litigation in this Court, and finally to a cross-appeal in the Eleventh Circuit.  Each phase of litigation required Plaintiffs to invest a significant number of hours to ensure the successful and final resolution of this matter.  Few civil matters proceed to trial and fewer still involve a cross-appeal from that trial.

The attorneys' fees are calculated as follows.

| Counsel | Rate | Hours | Lodestar |
|---|---|---|---|
| U.W. Clemon | $500 | 1062 | $531,000 |
| Samuel Spital | $480 | 59.2 | $28,416 |
| Jin Hee Lee | $480 | 40.5 | $19,440 |
| Monique Lin-Luse | $400 | 653.1 | $261,240 |
| Christopher Kemmitt | $400 | 753.7 | $301,480 |
| Deuel Ross | $360 | 18.5 | $6,660 |
| Clyde Hollins | $125 | 108.8 | $13,600 |
| Matthew Bailey | $125 | 87.5 | $10,937.5 |
| **TOTAL** | | **2,783.3** | **$1,172,773.50** |

---

[3]        Plaintiffs do not have contemporaneously kept time records for these periods.

**D.    Downward Adjustments to the Lodestar Are Not Warranted.**

As described *infra* and in the accompanying declaration of Plaintiffs' counsel, Mr. Kemmitt, Plaintiffs have conservatively calculated the number of hours claimed in this fee application. *See, e.g.*, Ex. A, Kemmitt Decl. ¶¶ 23-24.  Counsel have reviewed their time records and exercised billing judgment to eliminate any duplicative or excessive time entries.  *Id.*  Additionally, counsel have voluntarily reduced their hours worked in multiple respects as described *infra*. With these voluntary reductions, no further reductions for the prevailing party are appropriate. *See Hensley*, 461 U.S. at 431 (discussing cases where "plaintiffs obtained essentially complete relief" and were awarded attorneys' fees).

**E.    Plaintiffs' Requested Expert Fees Are Reasonable.**

Plaintiffs' request for expert fees and costs also is reasonable and is specifically authorized by the fee shifting provision.  *See* 42 U.S.C. § 1988(c) ("In awarding an attorneys' fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.").  Here, Plaintiffs retained the services of William Cooper, an expert demographer with decades of experience.  Mr. Cooper prepared 66-page expert report for Plaintiffs and also testified at trial.  His report and testimony were essential to Plaintiffs' efforts to prove that Gardendale's separation would have a deleterious impact on the desegregation obligations of Jefferson County.  Indeed, his report was cited at least ten times in the Court's opinion.  Mr. Cooper charged Plaintiffs only $100/hour—a particularly low fee for an expert witness.  Plaintiffs' request of $18,006 in reimbursement for Mr. Cooper's expert fees is reasonable.

**F.    Plaintiffs' Requested Litigation Costs Are Reasonable.**

Finally, Plaintiffs are entitled to receive "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" as costs.

*Evans v. Books-A-Million*, 762 F.3d 1288, 1298–99 (11th Cir. 2014) (quoting *ACLU*, 168 F.3d at 427); *see also Brooks v. Ga. Bd. of Elections*, 997 F.2d 857, 861 n.3 (11th Cir. 1993) ("The fee statutes provide for the reimbursement of reasonable costs incurred as well as the award of attorney's fees."). In particular, such costs as photocopying charges, fees of process servers, fax and telephone costs, travel, telephone, postage, and secretarial costs have been expressly held to be compensable under the fee shifting statutes. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 289 (1989); *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).

Accordingly, pursuant to 42 U.S.C. § 1988, Plaintiffs' counsel seek reimbursement in the amount of $116,842.18 for non-expert costs, reflecting, among other things: (1) filing and court admission costs, deposition costs, and hearing and trial transcript costs; (2) myriad trips to Alabama that Plaintiffs' counsel have taken in connection with this litigation (e.g., to investigate this case, conduct depositions, tour schools, and appear at hearings), including the two weeks that Plaintiffs' trial team stayed in Birmingham during the trial; (3) shipping; and (4) photocopying and preparation of the appellate briefs for the Eleventh Circuit. Ex. A, Kemmitt Declaration ¶ 59; Ex. A-8, LDF Costs. This figure represents $2,605 less that the total of the costs to reflect the fact that Plaintiffs have already received $2,605 from Defendants through a Bill of Costs in the Eleventh Circuit. *See* Ex. A, Kemmitt Decl. ¶ 59. Mr. Clemon was responsible for the outlay of $11,229.12 in costs, and LDF was responsible for $108,218.06 in non-expert costs (minus the $2,605 for the Bill of Costs). *See* Ex. A-8, LDF Costs; Ex. B-2, Clemon Costs.

Accordingly, Plaintiffs seek costs as follows:

| Category of Cost | LDF Costs | U.W. Clemon Costs |
|---|---|---|
| Parking/Tolls | $1,369.86 | $66.85 |
| Car Rental | $4,343.88 | |
| Taxi | $4,930.67 | $311.97 |
| Meals | $8,809.13 | $606.45 |
| Hotel | $34,790.88 | $2951.65 |
| Air Travel | $21,239.72 | $2,608.60 |
| Photocopying/Appellate Brief | $15,669.31 | |
| Mailing | $2,211.15 | |
| Court Costs | $14,365.87 | $500 |
| Conference Calls | $372.61 | |
| Supplies & Equipment | $5.08 | $617.66 |
| Mileage | | $188.48 |
| Lodging and Meals | | $3377.46 |
| Online Research | $109.90 | |
| **Total** | $108,218.06 | $11,229.12 |

Itemization of these expenses are also attached as an exhibit to the declaration of Plaintiffs'

counsel.  *See* Ex. A-8, LDF Costs; Ex. B-2, Clemon Costs.

18

## **CONCLUSION**

For the reasons discussed above, Plaintiffs' counsel respectfully requests that this Court award it reasonable attorneys' fees, expert fees, and costs in the amount of $1,307,621.68**.**

Dated: May 17, 2018

Respectfully Submitted,

/s/ Christopher E. Kemmitt                 /s/ U.W. Clemon
Christopher E. Kemmitt*                     U.W. Clemon
NAACP Legal Defense &                      Bar No. 0095-076U
   Educational Fund, Inc.                    5202 Mountain Ridge Parkway
1444 I Street NW                            Birmingham, AL 35222
Washington, D.C. 20005                      Tel: (205) 837-2898
Tel: (202) 682-1300                         clemonu@bellsouth.net
ckemmitt@naacpldf.org
                                            **Attorneys for Plaintiffs**

*Admitted Pro Hac Vice*

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May, 2018, a copy of the above and foregoing CORRECTED PLAINTIFFS' MOTION AND MEMORANDUM OF LAW FOR REASONABLE ATTORNEYS' FEES AND COSTS was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.  Unredacted copies of the redacted time sheets were mailed on May 4, 2018 to counsel of record at the following addresses:

Kelly Gardner
Melissa Michaud
Natane Singleton
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Patrick Henry Building, Suite 4
Washington, DC 20530

Shaheena A. Simons
Veronica R. Percia
U.S. Department of Justice
Civil Rights Division, Educational
Opportunities Section
601 D Street NW
Washington, DC 20004

Andrew Ethan Rudloff
Carl E Johnson, Jr.
Whit Colvin
Bishop Colvin Johnson & Kent
1910 First Avenue North
Birmingham, AL 35203

Aaron G McLeod
Giles G Perkins
Russell J Rutherford
Stephen A Rowe
Adams & Reese LLP
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203

Dana Bolden Hill
Hill, Hill Carter, Franco, Cole & Black, P.C.
100 Corporate Parkway, Suite 325
Birmingham, AL 35242

*/s/ Christopher E. Kemmitt*
Christopher E. Kemmitt*
NAACP Legal Defense &
  Educational Fund, Inc.
1444 I Street NW
Washington, D.C. 20005

*Admitted Pro Hac Vice*

20